DANIEL E. HENDRICKS AND BARBARA E. HENDRICKS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hendricks v. Commissioner
Docket No. 3042-92
United States Tax Court
T.C. Memo 1993-396; 1993 Tax Ct. Memo LEXIS 409; 66 T.C.M. (CCH) 561; August 30, 1993, Filed *409 Decision will be entered for respondent. For petitioners: Michael E. Caryl and David A. DeJarnett. For respondent: Aretha Jones and Stephen J. Neubeck. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioners' Federal income tax of $ 13,905 for 1987, $ 13,526 for 1988, and $ 11,887 for 1989. The sole issue for decision is whether petitioners operated their farm for profit in 1987, 1988, and 1989. We hold that they did not. References to petitioner in the singular are to Daniel E. Hendricks. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners are married and filed joint returns for 1987, 1988, and 1989. They lived in Inwood, West Virginia, during the years in issue and when the petition was filed. Petitioner is a physician and surgeon. He earned substantial income from his medical practice in 1987, 1988, and 1989. 2. Petitioner's Parents' Farm
In 1936, at the age of 2, petitioner moved with *410 his parents to a 160-acre farm in Jefferson County, West Virginia, where his parents raised cattle and grain. During petitioner's childhood he worked on his parents' farm on weekdays for about 45 minutes before school, 1-1/2 hours after school, and during summers. He performed a wide variety of chores including plowing, cultivating and harvesting crops, and caring for cattle. Petitioner's parents' farm was financially successful. Petitioner lived on his parents' farm while he attended Shepherd College from 1951 to 1953. During this period, he worked on his parents' farm on weekends. The work consisted of most of his childhood chores plus additional tasks such as building and repairing fences, machinery, and farm utility buildings. Petitioner attended medical school and completed his internship and residency in surgery from 1953 to 1963. He did not work on his parents' farm during those years. Petitioner practiced medicine in Martinsburg, West Virginia, from 1963 to 1967. During those years he helped his parents with their farm on weekends. Petitioner served in the United States Army from 1967 to 1969 and was stationed in Georgia. He did not work on his parents' farm while *411 he was in the Army. 3. Petitioners' Farm
In 1968, petitioners purchased a farm for $ 50,000 in Jefferson County, West Virginia. The farm has about 180 acres, two metal sheds, a barn for cattle and for hay storage, and a structure providing shade for cattle. The farm has no residence or recreational facilities. Petitioner's father died in 1970. Petitioner worked on both his and his parents' farm on weekends from 1970 to 1984. During that time, he essentially ran his parents' farm, but he did not know to what extent it was profitable. He observed that his mother lived comfortably on the income from the farm then. His mother moved to a nursing home in 1984, and his parents' farm was then sold. Petitioner tried unsuccessfully to buy it. Petitioner grew crops on his farm until 1974 or 1975. He then changed to raising cattle because growing crops had been unprofitable. Petitioner converted most of the farmland to pastures so the farm could support a larger herd and to cut the cost of winter feeding. In 1987, 1988, and 1989, petitioner had about 70 to 100 cattle on the farm, including 2 or 3 bulls. Petitioner replaced the bulls about every 2 to 3 years to prevent inbreeding. *412 Petitioner sold enough cattle to have about 70 cows in his winter herd. The farm cannot support a larger herd. Petitioner does not consume beef from his own herd. Petitioner bought a large amount of used farm equipment, particularly old tractors. He owns about 25 tractors. The latest model tractor (i.e., the newest) was manufactured in 1973. About 12 tractors are in operating condition, of which petitioner uses about 6 to 8. Petitioner's farm equipment on hand in 1987 originally cost $ 224,108. 4. Petitioner's Medical Practice and Farm-Related Activity
During the years in issue, petitioner typically worked in his medical practice from 8 a.m. until about 8 p.m., from Monday to Friday, and Sunday evening. He was on call 1 out of 5 days during the week, and 1 out of 5 weekends. When he was on call, he usually did not go to the farm. Petitioner attended church on Sundays. He worked on his farm most Saturdays, on most Sundays for part of the day, and occasionally on part of a weekday. To save money, petitioner performed a variety of tasks on his farm similar to those he had performed on his parents' farm. He inspected the land for litter left by hunters, posted "no *413 hunting" signs, and checked the cattle for gunshot wounds. He mowed pastures, fenced land, repaired fences, and provided some veterinary care. Petitioner gave dietary supplements to his cattle to increase beef production. He created and maintained a land bridge across a swampy area to give the cattle access to more grazing pastures. Petitioner provided feeding wagons for the cattle and planted different varieties of grass for grazing, arranged for the storage of grain and hay for later sale, calculated winter feeding requirements, and assured proper retention of good breeding stock. He also hired a part-time helper to feed and check on the herd. Petitioner's wife and one or more of their children occasionally helped petitioner with farm work such as mowing and repairing fences. In 1987, the first year in issue, the children were ages 14, 10, and 7. Petitioner has taken no courses in farming or cattle raising. He consulted with his veterinarian and a cooperative agent at the University of West Virginia. He also discussed farming techniques with Richard Dailey, an experienced farmer, until Mr. Dailey's death around 1983. Mr. Dailey knew the capabilities and limitations of *414 petitioners' farm land because he had worked on it for the previous owner. Petitioner joined the Jefferson County Farm Bureau around 1983. He subscribes to and reads several farming publications, including Southern States Cooperative Monthly Magazine, Farm Journal, Pennsylvania Farmer, and the Agricultural Yearbook. 5. Petitioners' Farm Income and Loss
Petitioner believed that his farm could become profitable if he spent more time with it and if he acquired more land to increase the size of his herd; however, petitioner has not done either of these things. Cattle sales were petitioners' only farm income during the years in issue. For the years in issue petitioners' farm gross receipts averaged $ 14,238 per year. Their farm net losses averaged $ 75,383 per year including depreciation. From 1971 to 1989, petitioners' farm-related deductions, including depreciation, exceeded farm income 17 out of 18 years by a net loss of $ 507,724. Excluding depreciation, their farm deductions exceeded farm income for those years by a total of $ 247,940. The following chart shows petitioners' reported farm loss and income from 1971 to 1991: Petitioners' farm
Farm cash
Farm Farm Farm (loss) Year
receipts expenses deprec.
income 1971
$   4,484
$ 17,259
$ 4,437
($   8,338)
1972
7,658
18,050
5,385
(5,007)
1973
5,440
21,683
7,098
(9,145)
1974
26,392
46,918
9,505
(11,021)
1975
18,883
35,513
11,054
(5,576)
1976
36,183
34,359
9,585
11,409 1977
6,635
25,980
9,795
(9,550)
1978
12,042
34,064
7,230
(14,792)
1979
17,592
35,542
9,029
(8,921)
1980
27,883
47,054
16,340
(2,831)
1981
21,502
62,753
19,861
(21,390)
1982
24,316
70,667
20,728
(25,623)
1983
23,966
72,694
23,336
(25,392)
1984
7,942
59,126
18,280
(32,904)
1985
38,689
47,865
18,523
9,347 1986
14,546
45,472
13,070
(17,856)
1987
10,424
46,541
17,732
(18,385)
1988
17,265
65,572
21,931
(26,376)
1989
15,025
57,479
16,865
(25,589)
1990
14,687
41,432
15,062
(11,683)
1991
12,307
47,459
13,792
(21,360)
TOTAL
363,861
933,482
288,638
(280,983)
*415 Total farm
Nonfarm
Net
income
income income Year
(loss)
reported reported 1971
($  12,775)
$   99,693
$   86,918
1972
(10,392)
102,834
92,442
1973
(16,243)
131,396
115,153
1974
(20,526)
70,167
49,641
1975
(16,630)
98,710
82,080
1976
1,824
114,073
115,897
1977
(19,345)
111,274
91,929
1978
(22,022)
113,176
91,154
1979
(17,950)
124,670
106,720
1980
(19,171)
162,445
143,274
1981
(41,251)
193,094
151,843
1982
(46,351)
214,504
168,153
1983
(48,728)
217,550
168,822
1984
(51,184)
277,096
225,912
1985
(9,176)
256,515
247,339
1986
(30,926)
278,738
247,812
1987
(36,117)
313,337
277,220
1988
(48,307)
383,533
335,226
1989
(42,454)
315,376
272,922
1990
(26,745)
283,041
256,296
1991
(35,152)
282,752
247,600
TOTAL
(569,621)
4,143,974
3,574,353
This chart excludes Schedules D and E, and Forms 4797 and 2106 amounts. During the years in issue, the Jefferson County Assessor appraised petitioners' farm for real estate tax purposes for a total value of $ 167,036. In 1993, the Jefferson County Assessor reappraised the farm at a value of $ 332,900. Petitioners used the same bookkeeper from *416 1969 and during the years in issue. The bookkeeper maintained complete books for petitioners using a double-entry bookkeeping system. Petitioners' books contained both farm and nonfarm records. Petitioners did not have separate farm and personal bank accounts. OPINION Section 183(c) disallows certain deductions for activities not engaged in for profit. In this context, "profit" means economic profit, independent of tax savings. Herrick v. Commissioner, 85 T.C. 237, 255 (1985); Seaman v. Commissioner, 84 T.C. 564, 588 (1985); Surloff v. Commissioner, 81 T.C. 210, 233 (1983). The test for deciding whether an activity is conducted for profit is whether the taxpayer entered into the activity with an actual and honest profit objective. Surloff v. Commissioner, supra; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1505 (D.C. Cir. 1983). The taxpayer's expectation need not be reasonable, but there must be a good faith profit objective. Dreicer v. Commissioner, supra; *417 sec. 1.183-2(a), Income Tax Regs. The burden of proof is on the taxpayer. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). We give greater weight to objective facts than to a taxpayer's mere statement of intent. Cherin v. Commissioner, 89 T.C. 986, 992 (1987). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of nine factors we may use in deciding whether an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. *418 No single factor controls. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Golanty v. Commissioner, supra; sec. 1.183-2(b), Income Tax Regs.
1. Manner in Which the Activity Is Conducted
Conducting an activity similarly to comparable businesses which are profitable may indicate that a taxpayer engaged in the activity for profit. Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs. Maintenance of complete and accurate records may indicate a profit objective. Elliott v. Commissioner, 90 T.C. 960, 971-972 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). A change in operating method or abandonment of unprofitable methods may also indicate a profit objective. Ronnen v. Commissioner, 90 T.C. 74, 93 (1988); Pirnia v. Commissioner, T.C. Memo. 1989-627; sec. 1.183-2(b)(1), Income Tax Regs.
Petitioners argue that they operate their farm similarly to profitable farms of the same size. Petitioners' books *419 displayed farm and nonfarm expenses in separate columns. In 1974 or 1975, after unsuccessfully raising corn and grain, petitioners began raising only cattle. Over the years, petitioner made other changes to reduce costs. However, we find it more significant that petitioner did not make changes he knew were needed to make a profit. Petitioner testified that one reason his parents' farm was profitable was because his father was a full-time farmer. Petitioner believed his farm could not become profitable until he spent more time there and increased the size of the farm and the herd. Petitioner could not increase the size of his herd without increasing the size of his farm, yet he has not purchased any additional property. Petitioner operated his farm at a loss for 17 out of 18 years. His long years of operation without making the changes he believed would make his farm profitable undermine his claim that he had a profit objective. Overall, this factor favors respondent. 2. The Expertise of the Taxpayer or His Advisers
Efforts to gain experience and a willingness to follow expert advice indicate a profit objective. Engdahl v. Commissioner, supra at 668 *420 (1979). Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, and consultation with those who are expert therein, may indicate that the taxpayer conducted the activity for profit. Pirnia v. Commissioner, supra.
Petitioner has expertise in farming. He grew up and worked on his parents' farm. He consulted with experts at the University of West Virginia, and with Mr. Dailey, who was an experienced farmer and familiar with petitioners' farm. Petitioner also read several farming publications. This factor favors petitioner. 3. Taxpayer's Time and Effort
The fact that a taxpayer devotes a substantial amount of time and effort to carrying on an activity may indicate a profit objective. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner has worked on his farm (and until 1984, his parents' farm) most weekends and some evenings since 1970. He testified that he spent about 16 hours on the weekend working on his farm. However, during those years, petitioner worked long hours each weekday as a surgeon and physician. He was on call 1 of 5 evenings and 1 in 5 weekends. Petitioner recognized *421 that he needed to spend more time at the farm to make a profit, and that his father made a profit because he farmed full time. The fact that he did not increase the time he spent on the farm detracts from his claim that he had a profit objective. Cf. Faulconer v. Commissioner, 748 F.2d 890, 898 (4th Cir. 1984) (taxpayer was a full-time farmer), revg. and remanding T.C. Memo. 1983-165. This factor favors respondent. 4. Expectation of Appreciation in Value
A taxpayer may intend to derive an overall profit from an activity, even if the activity is not currently profitable, if income from the activity and appreciation of the assets used in the activity exceed expenses of the activity. Sec. 1.183-2(b)(4), Income Tax Regs. Unrealized appreciation is relevant to deciding whether the taxpayer has a profit objective. Faulconer v. Commissioner, supra at 668; Lemmen v. Commissioner, 77 T.C. 1326, 1341-1342, 1342 n.22 (1981). Petitioners argue that from 1971 to 1993, their farm appreciated by $ 282,900 (the 1993 assessed real estate value of $ 332,900 less the $ 50,000 purchase price), *422 and that the appreciation indicates a profit objective because it exceeds their aggregate farm losses of $ 280,983 from 1971 to 1991. We believe that the value of petitioners' farm has appreciated, but we do not believe that there is enough appreciation to establish that petitioners had a profit objective. First, in comparing farm losses and farm appreciation, petitioners did not count depreciation. Petitioners' approach contrasts with the one used by the United States Court of Appeals for the Fourth Circuit in Faulconer v. Commissioner, supra. Petitioners argue that we should not consider depreciation because depreciation is a tax loss and not an economic loss. Petitioners provided no authority for this proposition. Petitioners' aggregate farm losses, including depreciation, from 1971 through 1989, were $ 507,724. In Faulconer v. Commissioner, supra, the United States Court of Appeals for the Fourth Circuit compared the taxpayers' farm appreciation during the years in issue to their farm losses, including depreciation. Id. at 892, 899. The appreciation ($ 282,900) claimed *423 by petitioners is much less than their $ 507,724 in aggregate losses, including depreciation. Second, in Faulconer, the parties stipulated that the appraised fair market value of the farms increased by $ 1.39 million during the years in issue. Id. at 898. In this case, petitioners' appreciation claim is much weaker. Petitioner counts appreciation from 1968 (year of purchase) to 1993 (year of tax assessment), yet counts only losses for 1971 to 1991. Petitioner did not show that the Jefferson County tax assessments were based on fair market value. A real estate assessment is not relevant to prove value unless the taxpayer offers some evidence that the assessment is based on the property's fair market value. Keelty v. Commissioner, T.C. Memo. 1984-173; Estate of Hankins v. Commissioner, T.C. Memo. 1981-326. The record contains little evidence concerning the value of the cattle or farm equipment. Petitioner gave his opinion that the winter herd was worth about $ 50,000 ($ 750 per head for cows and $ 1,000 to $ 2,000 per head for bulls) during the years at issue. He did not corroborate *424 this estimate. Petitioner claims that his tractors have essentially retained their value. We find this hard to believe because most of them are old and not in working condition. Unlike the taxpayers in Faulconer v. Commissioner, supra, petitioners have not shown appreciation to be sufficient to establish a profit objective. We conclude that this factor favors respondent. 5. Taxpayer's Success in Other Activities
The fact that a taxpayer has previously engaged in similar activities and converted them from unprofitable to profitable may indicate a profit objective, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.
Petitioners argue that petitioner successfully ran his parents' farm from 1970 to 1984. However, petitioner testified that he did not know about the finances of his parents' farm. We conclude from this testimony that petitioner was not responsible for the success of that farm. This factor is neutral. 6. Taxpayer's History of Income or Losses
A history of substantial losses may indicate that the activity was not conducted for profit. Golanty v. Commissioner, 72 T.C. at 427; *425 sec. 1.183-2(b)(6), Income Tax Regs. However, a taxpayer may have a profit objective even when the activity has a history of losses without any profit. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Losses sustained because of unforeseen or fortuitous circumstances beyond the control of the taxpayer do not indicate that the activity was not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.
Petitioner had farm losses in 17 of 18 years from 1971 through the years in issue. He testified that one of the reasons he bought the farm was to supplement his medical income, but he has continued to operate the farm at a loss. By 1991, he had incurred losses in 20 of 21 years. In Faulconer v. Commissioner, supra at 900, the United States Court of Appeals for the Fourth Circuit took into account the fact that some of the taxpayers' losses were fortuitous and unforeseen for the years in issue. In contrast, petitioners have not shown that their losses were caused by unforeseen circumstances. This factor favors respondent. 7. Amount of Occasional *426 Profits, if Any
Small occasional profits with large continuous losses may not indicate a profit objective. Sec. 1.183-2(b)(7), Income Tax. Regs. Petitioners' farm made a modest profit in only 1 of 18 years. A taxpayer is presumed to engage in an activity for profit if the activity produces a profit in 2 out of 5 consecutive taxable years. Sec. 183(d). In Faulconer v. Commissioner, 748 F.2d at 892, 900-901, the years in issue were 1970, 1972, 1973, and 1974; the farm produced a profit in 1971, 1975, and 1980. Thus, the Commissioner had the burden of proof. Id. at 893-894. In contrast, petitioners have the burden of proof in this case because they do not meet the section 183(d) requirements. The United States Court of Appeals for the Fourth Circuit also found the taxpayers' average annual gross receipts from 1970 to 1976 ($ 83,537) to be substantial compared to their average annual expenses ($ 98,272.48). Id. at 892, 901. In contrast, petitioners' average gross farm receipts were $ 14,238 for the years in issue, and their expenses averaged $ 75,383. This factor favors respondent. *427 8. Financial Status of the Taxpayer
Substantial income from sources other than the activity, especially if the losses generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Petitioners had substantial income against which they deducted farm losses totaling $ 507,724 in 17 out of 18 years, from 1971 to 1989. In Faulconer v. Commissioner, supra at 898, the taxpayers had substantial income from dividends, interest, and a trust; however, the Court discounted the importance of this fact because petitioner's only occupation was farming. In this case, petitioner's primary occupation and source of income is his medical practice. This factor favors respondent. 9. Elements of Personal Pleasure
A taxpayer's enjoyment of an activity does not demonstrate a lack of profit objective if the activity is, in fact, conducted for profit as shown by other factors. Jackson v. Commissioner, 59 T.C. 312, 317 (1972); sec. 1.183-2(b)(9), Income Tax Regs. However, for the losses from an activity to be deductible, the goal of the activity must *428 be to realize a profit. Bessenyey v. Commissioner, supra.The fact that petitioner did not take steps to make his farm profitable (e.g., enlarge it and the cattle herd), and that he expressed no interest in selling the farm to realize the appreciation, suggests that he was farming for pleasure. This factor favors respondent. Petitioner worked on his farm in his spare time and was knowledgeable about farming. However, his demanding surgical practice kept him from spending the time needed to make the farm profitable. He did not expand the farm and herd even though he believed these changes were necessary for it to be profitable. He had losses over a very long time. He did not convince us that there was enough appreciation in the value of the farm during the years in issue to show that he had a profit objective. Accordingly, we conclude he did not operate the farm with an actual and honest profit objective. Decision will be entered for respondent.